# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA GAS COMPANY, a California corporation,<br><br>                 Plaintiff,<br><br>vs.<br><br><br><br>SYNTELLECT, INC., a Delaware corporation,<br><br>                 Defendant.<br><br>SYNTELLECT, INC., a Delaware corporation,<br><br>                 Counterclaimant,<br><br>SOUTHERN CALIFORNIA GAS COMPANY, a California corporation,<br><br>                 Counterdefendant. | CASE NO. 08cv941 BEN (NLS)<br><br>**ORDER:**<br><br>**1. GRANTING SOUTHERN CALIFORNIA GAS COMPANY'S MOTION FOR PARTIAL SUMMARY ADJUDICATION** [Dkt. No. 49];<br><br>**2. DENYING SYNTELLECT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT** [Dkt. No. 52]; **and**<br><br>**3. GRANTING MOTION FOR SUPPLEMENTAL BRIEF** [Dkt. No. 71] |

Plaintiff Southern California Gas Company moves for partial summary adjudication for one element of its breach of contract claim for relief. Specifically, Southern California Gas seeks adjudication that Defendant Syntellect, Inc. breached a contract whereby Syntellect was to defend and indemnify Southern California Gas from a lawsuit brought by a third party. Syntellect opposes. At the same time Syntellect seeks summary judgment on each of Southern California Gas' claims.[1]

## I. BACKGROUND

Southern California Gas is a California utility company. In 2001, Southern California Gas entered into a written contract with Syntellect to purchase an automated interactive telephone system which Southern California Gas could use for handling incoming customer phone calls. Southern California Gas informed Syntellect of its system requirements by way of a request for proposal. The request for proposal was made part of the contract. Also made part of the contract were two indemnity provisions. One provision in particular obligated Syntellect to defend and indemnify Southern California Gas in the event Southern California Gas was sued for intellectual property infringement in connection with the automated interactive telephone system.

As it turns out, in 2007, Southern California Gas was sued. Ronald A. Katz Technology Licensing, LP ("Katz") sued Southern California Gas for patent infringement due to the use of the automated interactive telephone system Syntellect provided. Southern California Gas notified Syntellect of the suit and requested a defense. Syntellect declined. Southern California Gas then settled with Katz and demanded indemnity from Syntellect. Syntellect again declined. Southern California Gas then brought this action.

## II. LEGAL STANDARDS

The standards to be used in evaluating a motion for summary judgment or summary adjudication are well known and need not be repeated in detail. The main point is this: summary judgment is appropriate only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A material issue of fact is

---

[1] The motion addresses the contract claim and the fraud claim. It does not address the request for declaratory relief as such a request is properly considered a remedy, rather than a claim for relief.

one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party can identify evidence that demonstrates the absence of a genuine issue of material fact, then the burden shifts to the opposing party to produce evidence creating a genuine issue of fact. If genuine issues exist, then summary judgment is not appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party opposing summary judgment must identify facts showing there is a genuine issue for trial. *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (where defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). If summary judgment is not rendered on the whole action, the court may determine what facts are not disputed or may render partial summary adjudication on part of the claim or on liability alone. Fed. R. Civ. P. 56(g).

In cases resting on diversity jurisdiction, a federal court applies the law of the state in which it sits. California law generally recognizes agreed choice-of-law provisions in a contract. Witkin, *1 Summary of California Law,* Contracts, §§ 67-68 (10th ed. 2005). Section 28 of the contract between Southern California Gas and Syntellect designates California law as the parties' choice in matters of interpretation and performance of the contract. Consequently, California law applies to this dispute.

Under California law, the interpretation of a contract is generally a question of law for the trial court to decide. *Oceanside 84, Ltd. v. Fidelity Fed. Bank*, 56 Cal. App. 4th 1441, 1448 (Cal.Ct.App. 1997). The *Oceanside 84* court held:

> The interpretation of a written instrument, even though it involves what might properly be called questions of fact, is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.

*Id.* at 1451 (quoting *Parsons v. Bristol Dev. Co.,* 62 Cal. 2d 861, 865 (1965)). "When a dispute

arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over. If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean?" *Id.* at 1448 (citations omitted).[2]

### III.  DISCUSSION

Southern California Gas seeks summary adjudication on the question whether Syntellect breached the contract by failing to defend or indemnify. Southern California Gas does not seek a ruling on damages. At the same time, Syntellect seeks summary judgment against Southern California Gas on its entire complaint or, in the alternative, for partial summary judgment on one or more of the claims for relief.

**A.  BREACH OF CONTRACT**

For its motion, Southern California Gas contends that Syntellect breached the contract

---

[2] California has enacted rules for the interpretation of contracts in general and indemnity contracts, in particular. *See* Cal.Civ.Code § 2772 *et. seq*. In particular, § 2778 sets out seven rules for the interpretation of indemnity contracts:

> In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears:
> 1. Upon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable;
> 2. Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof;
> 3. An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion;
> 4. The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses, if he chooses to do so;
> 5. If, after request, the person indemnifying neglects to defend the person indemnified, a recovery against the latter suffered by him in good faith, is conclusive in his favor against the former;
> 6. If the person indemnifying, whether he is a principal or a surety in the agreement, has not reasonable notice of the action or proceeding against the person indemnified, or is not allowed to control its defense, judgment against the latter is only presumptive evidence against the former;
> 7. A stipulation that a judgment against the person indemnified shall be conclusive upon the person indemnifying, is inapplicable if he had a good defense upon the merits, which by want of ordinary care he failed to establish in the action.

indemnity provision. For its cross-motion, Syntellect contends it has meritorious defenses. As both motions focus on the contract claim, the arguments from both motions are considered here.

In the written contract between the parties, Section 20.2 contains an indemnity provision.[3] The language of the indemnity provision is broad. It covers both claims and liabilities. The provision states that Syntellect will indemnify and defend Southern California Gas in patent infringement actions connected with Syntellect's Vista Interactive Voice Response System. Specifically, the contract provides:

> Supplier shall indemnify, defend and hold Company, and its present and future direct or indirect parent company(ies), subsidiaries and affiliates...harmless from and against any and all claims, actions, suits, proceedings, losses, liabilities, penalties, damages, costs or expenses (including attorneys' fees and disbursements) of any kind whatsoever arising from (1) actual or alleged infringement or misappropriation by Supplier or any subcontractor of any patent, copyright, trade secret, trademark, service mark, trade name, or other intellectual property right in connection with the System, including without limitation, any deliverable, (2) Supplier's violation of any third party license to use intellectual property in connection with the System, including, without limitation, any deliverable.

It is undisputed that in 2007, Southern California Gas was sued for patent infringement. Katz sued Southern California Gas, claiming the interactive telephone system (which Syntellect sold under the 2001 contract) infringed several of the Katz patents. It is undisputed that Katz filed the complaint for patent infringement in the United States District Court for the Central District of California. Among the named defendants were Southern California Gas Company and its parent corporation, Sempra Energy.

It is undisputed that the Katz complaint alleged that the Sempra defendants "use infringing call processing systems to offer automated customer service to their customers." Specifically, the Katz complaint claimed that,

> the Sempra Defendants use infringing call processing systems to offer automated customer service to their customers. Using an automated system, in some instances in connection with operators, the Sempra Defendants allow their customers to access account

---

[3] The Gas/Syntellect contract also contains a more general indemnity provision in section 20.1. Section 20.1 does not mention patent infringement, while 20.2 specifically contemplates infringement claims. Syntellect argues that 20.1 was also breached because Syntellect did not inform it of the risk of a Katz infringement action. However, the argument is not addressed here. The Court finds Syntellect breached 20.2, which is sufficient for Southern California Gas's breach of contract claim.

> information; sign up for new service; transfer service; make a payment or a payment arrangement; schedule a service request; request a duplicate bill, a twelve-month usage report, or a letter of credit; enter a meter read; report a gas leak, power outage or emergency; and perform various other functions.

Katz Complaint, at ¶ 85.  It is undisputed that the Katz complaint alleged Katz owned 21 patents and that "in their automated customer service operations...the Sempra Defendants have been and are now infringing, actively inducing the infringement of, or contributing to the infringement of one or more claims of the patents...." *Id.* at ¶¶ 86-87.

It is also undisputed that, by letter dated August 21, 2007, Southern California Gas notified Syntellect of the Katz lawsuit for patent infringement and invoked the indemnity provision of the contract.  It is likewise undisputed that, by letter dated October 1, 2007, Syntellect denied that the indemnity provisions covered the Katz lawsuit, on the basis that "the Katz patents do not cover the products which SoCalGas purchased and/or licensed from Syntellect."  Finally, it is undisputed that Southern California Gas then settled the Katz lawsuit and demanded indemnity from Syntellect, and Syntellect refused.

Against this backdrop, there is no genuine issue of material fact that the infringing activity alleged in the Katz lawsuit hits the center of the parties' indemnity agreement and Syntellect's decision to neither defend nor indemnify for Southern California Gas' loss was a breach of the agreement.  Syntellect clearly provided the computer software to automate the various aspects of Southern California Gas's telephone customer service operations, and clearly that software is causally related to the patent infringement alleged by Katz.

The most analogous case is *Branch Banking & Trust Co. v. Syntellect, Inc.,* No. 08cv955-MHT, 2010 WL 2947772 (M.D. Ala. July 22, 2010).[4]  *Branch* also considered an indemnity agreement between Syntellect and a customer.  Like the customer in this case, in *Branch*, a bank issued a request for proposal seeking a computerized interactive voice response system to automate its customer call center.  And like the customer in this case, in *Branch*, the bank was eventually sued by Katz for infringing its patents.  When the bank notified Syntellect of the Katz

---

[4] Plaintiff's motion to permit post-argument briefing on the *Branch* decision is granted.  Both parties' briefs on the decision have been considered.

- 6 -                                                                                                                         08cv0941

1  action and tendered its demand for defense and indemnification, Syntellect declined.

2  Although *Branch* applied Arizona law, the pertinent similarities make the opinion
3  persuasive. For reasons explained in its opinion, *Branch* held that Syntellect breached its duty to
4  defend the bank from Katz' lawsuit, and granted summary judgment. *Id.* at *5-6. Its conclusion
5  applies equally well here.

6  In the present case, faced with liability that is plain from the face of the indemnity
7  agreement, Syntellect offers a number of reasons why it should escape liability.

8  **1.  Not Naming Syntellect in the Katz Lawsuit**

9  Syntellect argues that because Katz did not specifically name "Syntellect" or its Vista
10 software as the infringer in its complaint against Southern California Gas, the indemnity provision
11 is not triggered. The *Branch* court found that argument to be unconvincing. *Branch* noted, "[t]o
12 the extent that Syntellect contends that its duty to defend is triggered only if the complaining party
13 explicitly references the software, its argument is based on an unreasonably narrow reading" of the
14 indemnity provision. *Id.* at *5. "It is far more reasonable to conclude. . .that Syntellect's duty to
15 defend may be triggered by a complaint that 'simply describes what the software did.'" *Id.*; *see*
16 *also Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 126-27 (Cal.Ct.App.
17 2007) (that party suing for infringement had not named other defendants shows only that it wanted
18 relief for the infringement itself).

19 In its *Branch* briefing, Syntellect softens its argument. In one sentence, it advances the
20 argument that the indemnity provision narrowly covers only lawsuits alleging infringement by
21 Syntellect. *See* Syntellect's Supp. Br. in Opp., at 8. In another, it retreats: "Syntellect is not
22 contending that the [Katz] lawsuit had to specifically name 'Syntellect' to satisfy the indemnity
23 provision; although obviously, that would be one way to do it." *Id.* at n.6. The concession is
24 justified as the indemnity provision does not require a third party specifically to name Syntellect or
25 its product to trigger the indemnitor's duties. As in *Branch*, the argument fails here.

26 **2.   Involvement in Design Extinguishes the Right to Indemnity**

27 Syntellect argues that Southern California Gas' own negligence (in the design of the call
28 center) extinguishes its right to indemnity under California law. According to Syntellect, the

general rule is that an actively negligent tortfeasor cannot recover under a general indemnity provision that is silent on the issue of the indemnitee's negligence (citing *Maryland Cas. Co v. Bailey & Sons*, Inc., 35 Cal. App. 4th 856, 869 (Cal.Ct.App. 1995)). It argues that because Section 20.2 of the contract is silent on the issue and because Southern California Gas was an actively negligent tortfeasor, Plaintiff cannot recover under the indemnity section. Syntellect goes on to assert that "Gas's involvement in creating its own patent infringement liability was extensive" because: (1) it designed the overall call-processing center; (2) it hired a call center consultant to develop the specifications; (3) it prescribed all of the functions that the interactive voice response software needed to perform; (4) it prescribed the scripts, menus, and call flows that the software was to implement; and (5) it provided all of the other components of the call processing center.

Southern California Gas points out, however, that the "general rule," relied on by Syntellect, was modified by the California Supreme Court in 1975 in *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622, 633 (Cal. 1975) (rejecting mechanical application of active-passive negligence dichotomy in favor of individualized contract interpretation). Southern California Gas likewise undercuts Syntellect's reliance on *Maryland Cas. Co.* by pointing out that the court applied the old rule because the contract was formed at a time when the old rule was recognized. 35 Cal. App. 4th at 869 (when contracts were executed, old rule applied).

Another problem with Syntellect's argument is that the legal rule it relies on concerns the negligence of the indemnitee. Yet, patent infringement is a matter of strict liability, not negligence. "Because patent infringement is a strict liability offense, the nature of the offense is only relevant in determining whether enhanced damages are warranted." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007); *c.f. DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1348 (Fed. Cir. 2008) (the idea of the notice requirement of 35 U.S.C. § 287 is to prevent "innocent infringement").

California courts have not yet considered or applied the "active negligence" exception to a general indemnity provision where the contemplated liability flows from a patent infringement claim. But, even if the exception were to be considered in this case, no material facts demonstrate that Southern California Gas was actively negligent and that its negligent acts infringed the Katz

patents. Southern California Gas was certainly active in specifying what it wanted Syntellect's software to accomplish. But Syntellect has not identified evidence that Southern California Gas specified infringing software, or that Southern California Gas' actions – apart from using the software sold by Syntellect – infringed the Katz patents. Indeed, Syntellect has taken the position all along that the Katz patents were not infringed.

Ultimately, the question is answered by the breadth of the indemnity provision. The indemnity provision is broad. By its terms, it does not extinguish Syntellect's liability even in cases where Southern California Gas is actively negligent. Nor does it extinguish Syntellect's liability even in cases where Southern California Gas is accused of patent infringement for its own acts. Finally, there are no material facts demonstrating that Southern California Gas infringed the Katz patents in any manner other than by using the interactive voice software sold to it by Syntellect. Add to this the undisputed facts that: (1) Syntellect held itself out as competent to design custom interactive voice telephone software[5]; (2) Syntellect was aware that Katz had previously accused interactive voice call center software of infringement; and (3) there is no evidence that infringing software would be recognized by a customer like Southern California Gas. It makes sense that Southern California Gas would contract to protect itself from an infringement risk it could not control and that Syntellect would accept a liability for a risk it could control, and this intent is clear from the unambiguous language of the agreement. This case falls clearly within the intent of the parties for the indemnity provision in Section 20.2. The "active negligence" exception does not extinguish Syntellect's liability.

**3. Commercial Code § 2312(3) Extinguishes its Right to Indemnity**

Syntellect argues that California's Uniform Commercial Code § 2312(3) extinguishes Southern California Gas' right to indemnity because its software product merely complied with the specifications Southern California Gas furnished. Section 2312(3) states,

> Unless otherwise agreed a seller...warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement...but a buyer who furnishes specifications to the seller

---

[5] *See* 10-K filing by Syntellect, Inc. (dated 12/31/00) ("By 1995 we had become the fourth largest provider of IVR technologies in North America and the largest IVR provider in Europe."). Southern California Gas' request for judicial notice of the 10-K filing is granted. (Dkt. 49-24.)

> must hold the seller harmless against any such claim which arises out of compliance with the specifications.

Syntellect asserts that because Southern California Gas required certain design specifications, patent infringement was inevitable. For example, it argues, "because of SoCal Gas's designs and specifications, its call-processing center was doomed to infringe [Katz's] patents (or not) regardless of what Syntellect did, and even regardless of whether Syntellect won the bid." Syntellect's Mem. P. & A. in Support of its Mot. for Summ. J., at 17-18. This would present an arguable defense if: (a) the software Syntellect customized for Southern California Gas can be considered "goods"; and (b) there were no written indemnity provision in the Gas/Syntellect contract. *See e.g., Phoenix Solutions, Inc. v. Sony Elect., Inc.,* 637 F. Supp. 2d 683 (N.D. Cal. 2009) (recognizing application of § 2312(3) to indemnity for patent infringement). Even assuming, without deciding, that the software may be considered "goods," it is still clear that § 2312(3) does not apply in this case. *Cf. TK Power, Inc. v. Textron, Inc.*, 433 F. Supp. 2d 1058, 1061-62 (N.D. Cal. 2006) (issue of mixed goods and services often arises in transactions involving software under the U.C.C.); *contra Micro Data Base Syst., Inc. v. Dharma Syst., Inc.*, 148 F.3d 649, 654 (7th Cir. 1998) (customized software is "goods" under the UCC); *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 665 F. Supp. 2d 899, 913 (S.D. Ohio 2009) (software is "goods" under the UCC).

Subsection (3) does not apply because of the existence of the specific *written* indemnity provision in the agreement. Subsection (3) applies "unless otherwise agreed." California Commercial Code § 1101(3) makes clear that U.C.C. provisions may be altered or eliminated by the agreement of the parties. "The effect of provisions of this code may be varied by agreement...." Cal.Comm.Code § 1101(3). Here, the plain language of the Gas/Syntellect contract and its indemnity provision make clear that the parties agreed to a different allocation of risk. The agreed provision does not excuse Syntellect on the basis that Southern California Gas furnished specifications. On the contrary, the indemnity obligation was accepted by Syntellect even after Southern California Gas had furnished its specifications for the software.

### 4. Summary

To sum up, Southern California Gas's motion for summary adjudication on its breach of

1 contract element is granted. Likewise, Syntellect's cross motion for summary judgment is denied
2 as to the breach of contract claim. The Katz lawsuit against Southern California Gas falls within
3 the plain language of the broad contract indemnity provision of Section 20.2. The language is not
4 ambiguous and the provision can be interpreted without additional evidence of intent.

5       This conclusion is buttressed by the fact that the United States District Court for the
6 Middle District of Alabama reached the same conclusion last year on similar facts in *Branch*
7 *Banking*. Moreover, the arguments urged by Syntellect for an exception are unavailing. It was not
8 necessary that Katz identify Syntellect (or its software) by name in the patent infringement lawsuit
9 against Southern California Gas in order to trigger Syntellect's indemnification obligation.
10 Likewise, the "active negligence" exception, to the extent it remains part of California law, does
11 not extinguish Syntellect's indemnification obligation. Finally, California Commercial Code §
12 2312(3) does not apply, because the parties have specifically agreed to address the indemnification
13 risk in a different manner.

14 **B.  FRAUD**

15       Syntellect moves for summary judgment on Southern California Gas' fraud claim. The
16 fraud claim alleges that Syntellect had prior knowledge that its products and services "either were
17 infringing, or potentially could infringe, on the Katz patents," that this information was material to
18 Southern California Gas, and that Syntellect purposefully failed to disclose this information to
19 Southern California Gas.

20       Southern California Gas opposes, arguing that the motion is premature because the parties
21 have not conducted discovery on the question. Southern California Gas does not invoke Fed. R.
22 Civ. P 56(d) or ask for an extension of time to oppose. Southern California Gas argues that there
23 are triable issues of fact but has not specifically identified facts creating a genuine issue. For
24 example, Southern California Gas argues that Syntellect's alleged nondisclosure about its possibly
25 infringing software is material but asserts no evidence in support. It merely urges that, "*it is self-*
26 *evident* that the failure to disclose the Katz infringement was material." *See* S. Cal. Gas Mem. P.
27 & A. in Opp. to Syntellect's Mot. Summ. J., at 17-18 (emphasis added). The only evidence
28 identified by Southern California Gas is Syntellect's failure to disclose the existence of the Katz

patents to Southern California Gas prior to entering the contract. Before that becomes a material fact, however, it must be shown that Syntellect had a duty to disclose. That legal duty has not yet been established in this case. It may turn on whether a special relationship existed between the parties. For this proposition, Southern California Gas points only to the contract terms requiring confidentiality.

Because the Court has limited the parties to conducting discovery on the indemnity provisions,[6] the fraud claim has not been fully briefed. Although Syntellect has properly moved for summary judgment on the fraud claim, the motion is denied without prejudice. Syntellect may renew its motion after the Court permits discovery on the fraud claim.

## IV. CONCLUSION

Southern California Gas' motion for partial summary adjudication on the breach of contract claim for indemnity is granted. For the same reason, Syntellect's cross-motion for summary judgment on the breach of contract claim is denied. The remainder of Syntellect's motion for summary judgment is also denied, without prejudice. The motion to allow supplemental briefing is granted.

Within seven days of this Order, the parties shall notify the Magistrate Judge of the need for a further case management conference to address discovery and scheduling for the remainder of the case.

IT IS SO ORDERED.

DATED: March 28, 2011

Hon. Roger T. Benitez
United States District Judge

---

[6] *See* Order Following Case Mgmt. Conference (dated Aug. 14, 2009).