FILED

14 JAN 28 PM 1:33

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DS                                    DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA GAS COMPANY, a California corporation,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>SYNTELLECT, INC., a Delaware corporation,<br><br>　　　　　　　　　　　　Defendant. | CASE NO. 08-CV-941-BEN (MDD)<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Docket No. 172] |

Before this Court is a Motion For Partial Summary Judgment filed by Plaintiff Southern California Gas Company (SoCal Gas). (Docket No. 172). For the reasons stated below, the Motion is **GRANTED**.

## BACKGROUND

This case arises out of the SoCal Gas's purchase of an automated interactive system for handling incoming telephone calls made by Syntellect, Inc. (Syntellect). The Syntellect System is one component in SoCal Gas's system for handling customer phone calls. Among other functions, the System allowed SoCal Gas to tie an incoming call to customer information from SoCal Gas's computers. For instance, the System could obtain account records from a computer database based on the incoming phone number. Syntellect's custom application programs provided decision trees for handling calls based on the caller's inputs, enabling call flows that would allow the customer to

1    either complete their task in the automated system, or speak to a live operator.

2         The purchase agreement for the Syntellect System contained a broad indemnity

3    provision:

> [Syntellect] shall indemnify, defend and hold [SoCal Gas] . . . harmless
> from and against any and all claims, actions, suits, proceedings, losses,
> liabilities, penalties, damages, costs or expenses (including attorney's fees
> and disbursements) of any kind whatsoever arising from (1) actual or
> alleged infringement or misappropriation by [Syntellect] or any
> subcontractor of any patent, copyright, trade secret, trademark, service
> mark, trade name, or other intellectual property right in connection with
> the System, including without limitation, any deliverable (2) [Syntellect's]
> violation of any third party license to use intellectual property in
> connection with the System, including, without limitation, any
> deliverable.

10   (Purchase Agreement, Wilson Decl. Ex. I ¶ 20.2).

11        The "System" includes the Vista Interactive Voice Response System, custom

12   application programs developed by Syntellect specifically to SoCal Gas's application

13   specifications, and all specifications and requirements included in the Request for

14   Proposal. (Mem. Disp. at 3).

15        SoCal Gas was sued by a third party, Ronald A. Katz Technology Licensing, L.P.

16   (Katz), which alleged that SoCal Gas's system violated patents held by Katz. (Katz

17   Complaint, Wilson Decl. Ex. C). SoCal Gas asked Syntellect to defend the suit, but

18   Syntellect refused to defend or indemnify SoCal Gas. SoCal Gas reached a settlement

19   with Katz by entering a licensing agreement granting SoCal Gas a license to use the

20   patents, and releasing them from liability for past use. (Settlement Agreement, Wilson

21   Decl. Ex. D; Licensing Agreement, Wilson Decl. Ex. E). SoCal Gas agreed to pay a

22   licensing fee to Katz based upon past calls that had used the automated system. There

23   were two categories of calls for which Katz demanded payment and which had actually

24   occurred in the SoCal Gas system: 1) calls which were resolved entirely in the

25   automated system, and 2) calls that were in the automated system, then transferred to

26   a live customer service representative. (Katz Letter, Wilson Decl. Ex. F). For each

27   minute of the *entire duration* of both categories of calls, SoCal Gas agreed to pay

28   $0.011. (*Id.*; Lic. Ag. ¶ 1.12; Battles Decl. ¶ 25).

1    SoCal Gas filed the instant lawsuit to seek indemnification from Syntellect,
2    including the entire licensing fee paid in the settlement, attorney's fees, and interest.
3    (Compl.)   On March 28, 2011, this Court granted SoCal Gas's motion for partial
4    summary adjudication on the question of whether Syntellect breached the indemnity
5    provision by failing to defend and indemnify SoCal Gas in the Katz infringement case.
6    (Docket No. 79).   This Court also granted a motion *in limine* excluding evidence
7    related to the allocation of damages. (Docket No. 149).

8        Syntellect appealed to the Ninth Circuit.   In a memorandum disposition, the
9    Ninth Circuit affirmed this Court's grant of summary adjudication on the question of
10   liability.   (Mem. Disp. at 4).   The Ninth Circuit noted the broad language of the
11   indemnity provision, and that California law interpreted language such as "arising
12   from" to mean that liability will attach if the indemnitor's performance under the
13   contract is "causally related in some manner to the injury for which indemnity is
14   claimed."   (*Id.* at 3 (citing *St. Paul Fire and Marine Ins. Co. v. Am. Dynasty Surplus*
15   *Lines Ins. Co.*, 101 Cal. App. 4th 1038, 1050 (2d Dist. 2002))).   The Court found that
16   each of the "accused services" in the Katz complaint was "enabled by Syntellect's
17   performance of its contractual duties."   (*Id.*)   It concluded that the allegations of patent
18   infringement were causally related to Syntellect's provision of the System, and that
19   Syntellect was therefore liable for "damages stemming from utilization of the System."
20   (*Id.*)   The Ninth Circuit also found that SoCal Gas's own liability was reflected in the
21   "presumptively reasonable amount of the settlement." (*Id.* at 5).

22       However, the Ninth Circuit found that SoCal Gas must still demonstrate that the
23   entire liability should be allocated to Syntellect.   When there is a dispute over
24   allocation, the plaintiff is required to prove the reasonableness of the proposed
25   allocation by ordinary means, and a district court may not exclude all evidence relevant
26   to the allocation of damages. (*Id.*)   As this Court excluded such evidence, the case was
27   remanded for this Court to undertake this inquiry "in the first instance." (*Id.* at 6).

28       The Ninth Circuit clearly stated that it was not holding that apportionment was

1   required, or that Syntellect could not be held responsible for the entire amount. (*Id.*)
2   Rather, this Court must consider evidence to determine if apportionment is necessary.
3   To determine if apportionment is required, this Court is direct to consider the "nature
4   of the Katz claims as they apply to the indemnity provision and to other potentially
5   liable parties." (*Id.*) The Ninth Circuit stated that when an indemnity obligation is
6   "limited under the contract, an allocation of liability between culpable parties is
7   appropriate." (*Id.* at 5). Apportionment is appropriate where "some portion of the
8   liability for the alleged infringement is not embraced by Syntellect's indemnity
9   obligation." (*Id.* at 6)

10                                    **LEGAL STANDARD**

11          Summary judgment is appropriate when "there is no genuine dispute as to any
12   material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV.
13   P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In
14   considering a summary judgment motion, a court examines the evidence in the light
15   most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654,
16   655 (1962).

17          A moving party bears the initial burden of showing there are no genuine issues
18   of material fact. *Travelers Indem. Co. v. Arena Grp. 2000, L.P.*, No. 05-cv-1435, 2007
19   WL 4170421, at *5 (S.D. Cal. Nov. 20, 2007) (citing *Celotex Corp. v. Catrett*, 477
20   U.S. 317, 323 (1986)). It can do so by negating an essential element of the  non-
21   moving party's case, or by showing that the non-moving party failed to make a
22   showing sufficient to establish an element essential to that party's case, and on which
23   the party will bear the burden of proof at trial. *Id.* The burden then shifts to the non-
24   moving party to show that there is a genuine issue for trial. *Id.*

25          The moving party must support their assertion that a fact is not subject to
26   genuine dispute by either a) citing to materials in the record, such as depositions,
27   documents, electronically stored information, affidavits or declarations, stipulations,
28   admissions, interrogatory answers, or other materials; or b) showing that the materials

1  cited do not establish the absence or presence of a genuine dispute, or that an adverse
2  party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1).

3       On a motion for summary judgment, a party does not necessarily have to produce
4  evidence in a form that would be admissible at trial, as long as the requirements of
5  Federal Rule of Civil Procedure 56 are met. *Fraser v. Goodale*, 342 F.3d 1032, 1036-
6  37 (9th Cir. 2003) (citation omitted). Affidavits or declarations used to support or
7  oppose a motion must be made on personal knowledge, set out facts that would be
8  admissible in evidence, and show that the affiant or declarant is competent to testify
9  on the matters stated. FED. R. CIV. P. 56(c)(4).

10       "Only disputes over facts that might affect the outcome of the suit under the
11  governing law will properly preclude the entry of summary judgment. Factual disputes
12  that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. As
13  a general rule, the "mere existence of a scintilla of evidence" will be insufficient to
14  raise a genuine issue of material fact; there must be evidence on which the jury could
15  reasonably find for the non-moving party. *Id.* at 252.

16  **DISCUSSION**

17       As directed by the Ninth Circuit, apportionment is appropriate when the
18  indemnity obligation is limited and "some portion of the liability for the alleged
19  infringement is not embraced by Syntellect's indemnity obligation." (Mem. Disp. at
20  5, 6). The critical question is thus whether the scope of the liability provision, as
21  determined by this Court and the Ninth Circuit, covers the entire amount of the
22  settlement, or whether some portion of the settlement amount is not covered by the
23  indemnity obligation and allocation is required.

24       The parties agree that Syntellect is liable for "damages stemming from utilization
25  of the system." SoCal Gas contends that the undisputed facts and legal conclusions
26  demonstrate that no apportionment of liability is required. It argues that the entire
27  amount stems from the utilization of the System, and is covered by the indemnity
28  obligation as interpreted by the Court.

1    Syntellect contends that part of the settlement amount exceeds the scope of the
2    indemnity obligation.  Specifically, it claims that 1) the indemnity obligation does not
3    cover damages paid for portions of calls not conducted within the System, and 2) the
4    indemnity obligation does not cover damages to the extent that other components of
5    the automated call system are necessary to provide the allegedly infringing services.
6    It argues that these categories of damages do not "[stem] from the utilization of the
7    System." (Opp. at 1-2).

8         The arguments between the parties are essentially based on the interpretation of
9    the Ninth Circuit's language stating Syntellect is liable for damages "stemming from
10   the utilization of the Syntellect system." (Mem. Disp. at 3).  It is therefore necessary
11   for this Court to examine the indemnity provision to determine what kind of
12   relationship the damages must have to the utilization of the System, and how the
13   obligation is affected by the presence of other parties.

14   **A. The Necessary Relationship Exists Between the Use of the Syntellect System**
15   **and Damages Paid for Minutes Spent Waiting for an Operator or Speaking to an**
16   **Operator**

17        Syntellect argues that it should not be required to pay the portion of the licensing
18   fee attributable to the 63% of minutes where a caller was either waiting for a live
19   operator, or speaking to a live operator.  It argues that apportionment is appropriate
20   because such damages do not stem from the utilization of Syntellect's System.  SoCal
21   Gas contends that such minutes do stem from the utilization of the System.  The factual
22   relationship between the use of the System and the minutes spent waiting for an
23   operator or talking to an operator is sufficient for damages for those minutes to fall
24   within the indemnity obligation.

25        Syntellect essentially admitted that each of the accused services from the Katz
26   complaint was enabled by its performance of its contractual duties. (Mem. Disp. at 3).
27   Examination of the Katz complaint confirms that all claims against SoCal Gas were
28   based on services enabled by Syntellect's system, including the partially automated

1   calls.  It stated that Katz's inventions were "directed to the integration of telephonic
2   systems with computer databases and live operator call centers to provide interactive
3   call processing services."  (Katz Compl. ¶ 26).  SoCal Gas was accused of using
4   infringing call processing systems  to offer automated customer services, "in some
5   instances in connection with operators." (*Id.* ¶ 85). Katz listed accused services, some
6   of which required live operators. (*Id.*) Katz clearly alleged that SoCal Gas violated its
7   patents not only when a caller exclusively operated in the automated system, but when
8   SoCal Gas provided services using the System and live operators.

9       It is also undisputed that the payment of the licensing fee was for the "sole
10  purpose" of settling the patent infringement lawsuit. (Resp. to Separate Statement of
11  Undisputed Facts No. 2). As SoCal Gas paid the licensing fee to settle the claims, and
12  all claims were based on services enabled by Syntellect's System, then the entire
13  amount of damages was paid to settle claims enabled by the System.

14      The contract requires Syntellect to indemnify SoCal Gas against "any and all"
15  damages "of any kind whatsoever" arising from actual or alleged infringement of
16  intellectual property rights, including patents, "in connection with the System."
17  Significantly, this language is not requiring Syntellect to pay for damages "arising
18  from" the use of the System, it requires the payment of damages "arising from"
19  allegations of infringement in connection with the System.  It is apparent that Katz's
20  claim that the partially automated calls infringed the patent is an allegation of
21  infringement of property rights in connection with the System. The licensing fee arose
22  from that infringement claim.   The clear terms of the contract therefore require
23  Syntellect to pay for "any and all" damages arising from that allegation. Nothing in the
24  contract requires a particular unit of damages to itself be traceable to the System.

25      Even if one were to read the Ninth Circuit's opinion to impose an additional
26  requirement that a particular unit of damages must stem from the utilization of the
27  system, the minutes in question meet this requirement.

28      The licensing agreement required SoCal Gas to pay for every minute spent

waiting for an operator or speaking to a live operator, if the call spent time in the automated system. If the call did not pass through the system, then no damages would be paid for those minutes. SoCal Gas argues that the damages thus stem from use of the System. SoCal Gas also asserts that it benefits from the use of the Syntellect System even after the customer is no longer actively engaging with the System. For instance, the call is tagged with relevant information, and the System could be used to help properly route a call or give information to a live operator about the call to use during the live portion of the call. (Brooks Dep., Wilson Ex. G, 23:9-24, 25:9-26:3, 26:16-20).

Each minute for which a licensing fee was paid was part of an allegedly infringing service enabled by the System. Syntellect's effort to isolate the minutes spent outside the system is artificial. The damages for minutes spent talking to a live operator or waiting for a live operator during a partly automated call were paid only because the minutes in question were part of an infringing service. The Syntellect System was not merely an incidental presence during those minutes. Its role was not limited to something that the callers passed through, and it was not simply present in the call system while entirely independent acts of alleged infringement took place. The System played an important role in the alleged infringement of patents by providing automation during the call and by allowing SoCal Gas to benefit from the System's ability to tag calls and help access information, even after the customer had left the system. Syntellect cannot avoid liability because the customer was not actively engaging with the System for part of the service.

Apportionment of the waiting time and live operator minutes is appropriate if they are "not embraced by Syntellect's indemnity provision." As these minutes clearly are embraced by the provision, no apportionment is required on that basis.

**B. Syntellect Cannot Allocate Liability to Other Components**

Syntellect argues that liability must be apportioned between it and other components of the call system. It argues that because other components were required,

1  not all of the damages stem from the use of the System.

2  The Ninth Circuit expressly directed this Court to apportion damages if liability
3  was *not* embraced by the indemnity provision.  The text of the provision requires
4  Syntellect to pay "any and all claims, actions, suits, proceedings, losses, liabilities,
5  penalties, damages, costs or expenses of any kind whatsoever" arising from patent
6  infringement allegations in connection with the System. (Purchase Ag. ¶ 20.2). This
7  language is expansive.  It makes no provision for allocation and does not purport to
8  limit Syntellect to damages for which Syntellect is at fault.  Instead, it clearly envisions
9  that damages paid for patent allegations in connection with the Syntellect system will
10 "all" be paid by Syntellect.  Neither the text, nor the Ninth Circuit's opinion requires
11 that the damages stem solely or primarily from the utilization of the system.  Syntellect
12 is essentially arguing that the multiple components are causally related to the damages,
13 but the contract provides no basis for Syntellect to avoid paying the entire amount.  The
14 entire settlement amount was used to settle infringement claims in connection with the
15 System, and Syntellect bound itself to pay "any and all" such damages.

16 California precedent makes clear that where a party promises to pay the damages
17 "arising from" an activity and the party does not impose other limitations on that
18 liability, the indemnitor must pay the full amount, even if another party's actions are
19 casually related, or even primarily to blame for the injury.  In interpreting "arising
20 from" in the memorandum disposition, the Ninth Circuit cited to the decision of a
21 California Court of Appeal in *St. Paul Fire*, 101 Cal. App 4th 1038. (Mem. Disp. at
22 2-3).  The *St. Paul Fire* court reviewed California precedent in order to determine
23 whether the relationship between the injury and the particular activity was sufficient
24 to fall within an indemnity agreement. *See* 101 Cal. App. 4th at 1049-54.  The Court
25 of Appeal carefully examined and contrasted the situation before it with *Fireman's*
26 *Fund Ins. Cos. v. Atlantic Richfield Co.*, 94 Cal. App. 4th 842 (5th Dist. 2001), and
27 *Acceptance Ins. Co. v. Syufy Enters. Inc.*, 69 Cal. App. 4th 321 (1st Dist. 1999).  In
28 both *Fireman's Fund* and *Syufy*, the policy was held to cover the entirety of the

08cv941

1   damages, even though another party was actually responsible for the injury, and efforts
2   to recover from the culpable party were denied. *St. Paul Fire* quoted *Syufy*'s
3   justification for denying an insurance company's efforts to recover from the building
4   owner responsible for a defective hatch that caused injury. The *Syufy* court determined
5   that the fact that the defect was attributable to the other party's negligence was
6   "irrelevant, since the policy language does not purport to allocate coverage according
7   to fault." *Syufy*, 69 Cal. App. 4th at 329 (quoted in *St. Paul Fire*, 101 Cal. App. 4th at
8   1051). By contrast, in determining that an indemnity provision did not require the
9   indemnitor to provide coverage, the *St. Paul Fire* court emphasized that the *St. Paul
10  Fire* contract had special language limiting its indemnity obligation. 101 Cal. App. 4th
11  at 1052-53.

12      This Court does note that the factual context of this case is important and that
13  this case does not involve an insurance contract. In *Rossmoor Sanitation, Inc. v. Pylon,
14  Inc.*, 13 Cal. 3d 622, 633 (1975), the California Supreme Court stated that the question
15  of whether an indemnity agreement covers a given case turns primarily on contractual
16  interpretation, and the intent of the parties as expressed in the agreement controls. This
17  analysis involves an inquiry into the circumstances of the damage or injury and the
18  language of contract, and each case will turn on its own facts. *Id.* As this Court said
19  in granting summary judgment on breach of contract liability, Syntellect would be
20  liable under the provision even if SoCal Gas was actively negligent or SoCal Gas was
21  accused of patent infringement for its own acts. (Docket 79 at 9). Given the factual
22  situation at hand, it makes sense that SoCal Gas would contract to protect itself from
23  an infringement risk it could not control and that Syntellect would accept liability for
24  a risk it could control, and this intent is clear from the unambiguous language of the
25  contract. (*Id.*)

26      Syntellect argues that the Ninth Circuit directed this court to consider the nature
27  of the Katz claims as they apply to the indemnity provision "and to other potentially
28  liable parties." (Opp. at 10 (citing Mem. Disp. at 6)). However, examination of the

- 10 -

1    indemnity provision in the first instance demonstrates that the existence of other
2    potentially liable parties is immaterial in determining Syntellect's obligations. The
3    Ninth Circuit held that "[w]here a party's indemnity obligation is limited under the
4    contract, an allocation of liability between culpable parties is appropriate." (Mem.
5    Disp. at 5). Allocation would be necessary if Syntellect's indemnity obligation was
6    limited in such a way that the entire award was not clearly covered. However, this
7    Court has determine that there is no such limitation here. The only relevant limitation
8    found in the contract is that the "claims, actions, suits, proceedings, losses, liabilities
9    penalties, damages, costs or expenses" arise from actual or alleged infringement or
10   misappropriation "in connection with the System." (Purchase Ag. ¶ 20.2). The entire
11   Katz settlement licensing fee fits within that requirement.

12        This is well-illustrated by the case cited by Syntellect, *Heppler v. J.M. Peters*
13   *Co.*, 73 Cal. App. 4th 1265 (4th Dist. 1999). As the indemnity provision limited each
14   subcontractor's liability to the performance of its own work, and not that of another
15   subcontractor or Peters, it was necessary to show each allocation was reasonably
16   related to the subcontractor's performance. *Id.* at 1277. The *Heppler* court reviewed
17   California precedent finding that parties had great freedom of action in allocating risk,
18   and could require negligence by the indemnitor as a condition of indemnification, or
19   establish a duty to save the indemnitee even if the indemnitor is not negligent. *Id.*
20   (citations omitted). The court examined the provision at issue and determined that
21   indemnitor fault was necessary based on contractual language and the commercial
22   context. *Id.* at 1278-81. By contrast, Syntellect's indemnity provision is not limited
23   by a requirement of indemnitor fault.

24        Syntellect also cites to *Peter Culley & Assoc. v. Super. Ct.*, 10 Cal. App. 4th
25   1484 (1st Dist. 1992). The case requires an indemnitee to show that the liability is
26   covered by the contract, that liability existed, and the extent thereof. *Id.* at 1497. The
27   case required the plaintiff to prove the reasonableness of its allocation by ordinary
28   means. In *Peter Culley*, it was undisputed that Culley was not liable for the entire

1  amount, and the case addressed the question of what allocation was reasonable. *Id.* at

2  1498.

3       The indemnity obligation at hand makes no effort to allocate damages. Instead

4  Syntellect agreed to indemnify SoCal Gas for "any and all" damages "of any kind

5  whatsoever" arising from infringement claims in connection with the System. As all

6  of the damages paid arose from infringement claims for services enabled by the use of

7  the System, Syntellect must pay them in their entirety.

8       It is therefore irrelevant whether other components or actions by SoCal Gas were

9  necessary for infringement or contributed to infringement. To the extent facts related

10 to the contributions of other parties are in dispute, they are not material, and they will

11 not defeat summary judgment.

12 **C. The Grant of Summary Judgement is Consistent With the Decision to Remand**

13      Syntellect argues that if these facts were sufficient, the Ninth Circuit would not

14 need to remand the case, and it is therefore inappropriate to read the opinion in that

15 way.

16      The Ninth Circuit asked this Court to determine the question of allocation "in the

17 first instance." (Mem. Disp. at 6). Although it held that it was improper to exclude

18 evidence regarding allocation, the Ninth Circuit did not rule that this Court could not

19 consider the available evidence and grant summary judgment. To resolve the allocation

20 dispute, this Court needed to examine the scope of liability and determine the extent

21 to which the damages paid all fit within the scope. For instance, it was necessary to

22 determine that the entire licensing fee was paid solely to settle the Katz claims. It was

23 also necessary to determine that the contractual provision did not provide for allocation

24 according to fault. Although the Ninth Circuit affirmed this Court's liability finding,

25 it was still necessary for this Court to determine that this finding meant that all the

26 damages were covered. This Court is able to make the necessary determination based

27 upon the undisputed facts, but it had to examine those facts and reach those

28 conclusions.

1    Indeed, it may well have been inappropriate for the Ninth Circuit, once it
2    concluded that this Court had not made any allocation finding, to have done so on its
3    own. The Ninth Circuit lacks the power to make new findings of fact. *Smallfield v.*
4    *Home Ins. Co. of N.Y.*, 244 F.2d 337, 341 (9th Cir. 1957). Such findings of fact were
5    necessary to determine that allocation was not required in this situation. Remand also
6    allowed Syntellect a chance to present its arguments to ensure there were no important
7    issues that had not been fully presented to the Ninth Circuit.

8                                    **CONCLUSION**

9    It is SoCal Gas's burden to "prove the reasonableness of its proposed allocation."
10   (Mem. Disp. at 5). SoCal Gas has put forward undisputed facts in its Motion for
11   Summary Judgment. This Court has considered all of the facts proffered to support or
12   rebut SoCal Gas's proposed allocation of damages. The Court determines that each of
13   the Katz claims falls within the indemnity provision, and that all of the damages were
14   paid to resolve those claims. The provision only limits Syntellect's liability inasmuch
15   as any of the damages do not arise from infringement allegations in connection with
16   the System. SoCal Gas has adequately demonstrated that the undisputed facts show
17   that all of the damages are covered by the indemnity provision. As the indemnity
18   provision does not limit its liability in any relevant way with regard to damages paid
19   for the Katz claims, no allocation is required.

20   Based on the scope of the indemnity provision and the nature of the Katz claims,
21   this Court determines that the entire Katz settlement licensing fee is within the scope
22   of the indemnity provision, and that allocation is not appropriate. SoCal Gas's Motion
23   for Partial Summary Judgement is **GRANTED**.

24   **IT IS SO ORDERED**.

25

26   Date: January 28, 2014

27                                                         HON. ROGER T. BENITEZ
                                                          United States District Judge
28

08cv941